## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JULIUS JAMES, R19702,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.  3:14-cv-00463-JPG-PMF** |
| | ) | |
| **RICHARD HARRINGTON, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

Before the Court is the Motion for Summary Judgment (Doc. 31) filed by defendants Roger Pelker and Shane Quandt.[1] Pelker and Quandt argue that plaintiff Julius James failed to exhaust available administrative remedies prior to filing suit. According to these defendants, James failed to exhaust administrative remedies against them because they were not specifically named or identified in his prison grievances. James filed a response in opposition (Doc. 34). Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 on April 23, 2014 (Doc. 1) claiming that various Illinois Department of Correction ("IDOC") employees violated his constitutional rights. Plaintiff proceeds a single Eighth Amendment failure to protect claim against defendants Richard Harrington, Salvador Godinez, Roger D. Pelker and Shane A. Quandt.[2] For the following reasons, it is recommended that the motion for summary judgment filed by Pelker and Quandt be GRANTED.

---

[1] The parties' pleadings did not present any genuine disputes of material fact and so the Court declined to hold a *Pavey* evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

[2] Plaintiff's initial complaint included John Doe defendants. An amended complaint was later filed to identify the unknown defendants as Roger Pelker and Shane Quandt. (*See* Docs. 18, 23, 24 and 25).

Plaintiff Julius James is an inmate with the IDOC and the events that give rise to this litigation occurred while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff states that prior to his placement at Menard, he and fellow inmate Aaron Smith developed a strong dislike for one another while they were at Pontiac Correctional Center. (Doc. 25, p. 5). According to James's first amended complaint, Smith threatened James in 2009 and in 2010 James submitted a grievance declaring Smith an enemy. *Id*. Tension between the two came to a head in 2013 while they were at Menard. James states that on August 2, 2013 he submitted a grievance to Salvador Godinez and an emergency grievance to Warden Richard Harrington stating that his safety was at risk from Smith. Then on August 13, 2013 James notified both Pelker and Quandt that he was in danger. James sent Pelker a "kite" or note addressing the Smith issue and he spoke to Quandt while being escorted to the prison yard. That same day, James was involved in an altercation with Smith in the prison yard.

Following the altercation, James was issued an Inmate Disciplinary Report ("IDR") for fighting. The parties do not dispute that James then filed the "160-8-13" grievances (two grievances dated August 22, 2013 and August 30, respectively) concerning the altercation. (Doc. 32-2, ps. 3-4). In the August 22, 2013 grievance James requests that the IDR be expunged. James argues in the grievance that he was merely defending himself from inmate Smith. The grievance also mentions that he filed prior grievances regarding Smith in 2010 and on August 2, 2013. In the August 30, 2013 grievance James reiterates that the IDR should be expunged and that he filed the three prior grievances "to prevent the attack." James properly exhausted these two grievances at the institution level and through IDOC Administrative Review Board ("ARB"). The ARB issued a ruling denying the grievances on April 1, 2014. (Doc. 32-2, p. 4). No other grievances involving the August 13, 2013 altercation were appealed to the ARB.

The defendant now seeks summary judgment on the basis that the plaintiff failed to exhaust administrative remedies prior to filing suit.  Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a). The reviewing court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

Inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before filing a lawsuit. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Inmates must follow all grievance rules established by the correctional authority. *Id*.

For non-emergency grievances, the Illinois Department of Corrections ("IDOC") has a three-step process that prisoners are required to follow in order to exhaust administrative remedies.  At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.

 At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the prison Grievance Officer within sixty (60) days of discovery of the dispute. *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Warden (also known as the Chief Administrative Officer or "CAO"). *See* 20 Ill.Admin.Code § 504.830.

The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB").  After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. 20 Ill.Admin.Code §

504.850. The Director of IDOC and the ARB are required to make a "final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id*. Administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

The process for emergency grievances is slightly different. Emergency grievances are forwarded directly to the Warden, and "if the [Warden] determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." 20 Ill. Admin. Code § 504.840. If the CAO makes a determination that the grievance is not of an emergency nature the plaintiff may appeal the CAO's decision directly to the ARB. 20 Ill. Admin. Code. § 504.840, *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.2005). The plaintiff is not required to resubmit an emergency grievance through the normal non-emergency process. *See Thornton*, 428 F.3d at 694; *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("In *Thornton* … we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary.").

IDOC prisoner grievances must also provide descriptive information for each person involved in the grieved issue. The grievance forms state that the prisoner is to "provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." The IDOC regulations reiterate this requirement:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not

preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code. § 504.840(b).

Here, the plaintiff did not exhaust available administrative remedies for Pelker or Quandt. The IDOC grievance regulations (and forms) require that inmates identify each person involved in the grieved issue. If the prisoner does not know the names of the individuals involved, the prisoner must provide enough information to identify the unknown individuals. Neither Pelker nor Quandt is named in the two grievances exhausted to the ARB. Moreover, there is no descriptive information in the grievances indicating that James spoke to correctional staff on August 13, 2013 regarding his concerns. In sum, these grievances fail to provide enough information to identify Pelker and Quandt. Prison grievances do not have to mirror the complaint but prisoners are required to abide by IDOC grievance requirements. Here, James failed to do that. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

James also argues that even if he did not properly identify Pelker and Quandt, he was precluded from doing. James states that he filed grievances that address those two individuals but IDOC employees failed to respond. James is correct in that the administrative remedies process "becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, the three grievances at issue (the grievances James asserts were not responded to) were filed prior to August 13, 2013 (the 2010 Pontiac grievance and the two grievances filed on August 2, 2013). These three grievances were therefore filed prior to Pelker and Quandt's involvement and the grievances could not have exhausted

administrative remedies against them. With that said, the plaintiff should be aware that dismissal for failure to exhaust is without prejudice, *see Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005); *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir.2004) and in Illinois the limitation period for filing claims under 42 U.S.C. § 1983 is two years. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001).

## RECOMMENDATIONS

The plaintiff failed to exhaust available administrative remedies against defendants Pelker and Quandt before filing this lawsuit. It is therefore RECOMMENDED that summary judgment be granted for defendants Pelker and Quandt.

**SO RECOMMENDED.**

**DATED:  August 17, 2015.**

> *s/ Philip M. Frazier*
> **PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**